UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                          :
THERESA KEIR, MICHELLE WASHINGTON,        :
KAREN M. GATELY, and THOMAS ROCCO,        :
individually and on behalf of all         :
others similarly situated                 :
                        Plaintiffs,       :
                                          :
        -v-                               :
                                          :      02 CIV. 8781 (DLC)
UNUMPROVIDENT CORPORATION, THE PAUL       :
REVERE LIFE INSURANCE COMPANY,            :      OPINION & ORDER
PROVIDENT LIFE AND ACCIDENT INSURANCE     :
COMPANY, PROVIDENT LIFE AND CASUALTY      :
INSURANCE COMPANY, FIRST UNUM LIFE        :
INSURANCE COMPANY, UNUM LIFE INSURANCE    :
COMPANY OF AMERICA, COLONIAL LIFE AND     :
ACCIDENT INSURANCE COMPANY, and  J.       :
HAROLD CHANDLER,                          :
                        Defendants.       :
                                          :
--------------------------------------- X

APPEARANCES:

For Plaintiffs:
Richard J. Quadrino
William J. O'Mahony
Evan S. Schwartz
Michail Z. Hack
Quadrino Schwartz
666 Old Country Road, 9th Floor
Garden City, NY 11530

For Defendants:
Robert Wright
Rafael Vergara
White and Williams LLP
One Penn Plaza
250 W. 34th Street, Suite 4110
New York, NY 10119

William J. Kayatta, Jr.
Gavin G. McCarthy
Pierce Atwood LLP
One Monument Square
Portland, ME 04101

DENISE COTE, District Judge:

Plaintiffs Theresa Keir, Michelle Washington, Karen Gately, and Thomas Rocco (collectively, the "Plaintiffs") brought this action in November 2002 after their claims for disability insurance benefits were denied or terminated by defendants UnumProvident Corporation and six of its insuring subsidiaries (collectively, "Unum").  Plaintiffs assert claims against Unum and its former Chairman and Chief Executive Officer, J. Harold Chandler (collectively, the "Defendants"), under §§ 502(a)(3) and 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  On September 30, 2003, this action was transferred by the Judicial Panel on Multidistrict Litigation ("MDL Panel") to the United States District Court for the District of Tennessee.  The action was remanded to this Court on April 8, 2010.  The Plaintiffs have moved for partial summary judgment and the Defendants have cross-moved for summary judgment.  For the following reasons, the Defendants' motion is granted.

BACKGROUND

A.  Plaintiffs' Claims

Each of the Plaintiffs made claims for disability insurance benefits under employee welfare benefit plans established by their employers and administered by Unum.  Plaintiffs allege

2

that their claims were wrongfully denied or terminated by Unum
pursuant to a scheme involving the use of budgets and targets to
meet expectations as to revenue and profits.  Each Plaintiff's
policy provides that the policy is governed by the law of New
York, which is also the state in which all four Plaintiffs
resided when they submitted their claims.

Plaintiffs filed this putative class action on November 4,
2002, alleging violations of ERISA and its implementing
regulations.  On November 18, 2002, Plaintiffs filed a first
amended complaint (the "Amended Complaint").  The Amended
Complaint asserted a claim for breach of fiduciary duty by all
Defendants pursuant to ERISA § 502(a)(3), 29 U.S.C.
§ 1132(a)(3), and a claim for interference with the attainment
of benefits pursuant to ERISA § 510, 29 U.S.C. § 1140.  The
Amended Complaint principally alleged that the Defendants
engaged in a scheme to use financial budgets and targets to
terminate disability claims wrongfully in violation of ERISA.

The Plaintiffs sought the following injunctive and
equitable relief:  (1) an order that Defendants "cease engaging
in the offending practices" delineated in the Amended Complaint
and "institute new, national procedures that are in full
compliance with ERISA"; and (2) an order that Defendants "re-
evaluate all of the denied, terminated, or suspended claims of
Plaintiffs and the Class Members in full compliance with the

new, appropriate procedures and render disability payments to all such persons, participants, or beneficiaries whose adverse claims decisions are reversed upon re-evaluation." In the alternative, the Plaintiffs requested that the Defendants be enjoined from serving as claim fiduciaries and the imposition of a constructive trust over trust assets controlled by Defendants.

On January 17, 2003, the Defendants moved to dismiss the Amended Complaint. The Defendants' motion rested principally on the contention that the Plaintiffs were, or should have been, seeking an award of benefits for their asserted disabilities, and were therefore required to bring this action under ERISA § 502(a)(1)(B), which permits any participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Defendants' argument was rejected and their motion to dismiss was denied in an Opinion dated April 29, 2003. See Keir v. UnumProvident Corp., 02 Civ. 7871(DLC), 2003 WL 2004422 (S.D.N.Y. Apr. 29, 2003).

On September 30, 2003, the action was transferred by the MDL Panel to the United States District Court for the District of Tennessee for consolidation with six other lawsuits. In re UnumProvident Corp. ERISA Benefits Denial Actions, No. 03 Civ. 1000, MDL No. 03 Md. 1552 (E.D. Tenn.). A Consolidated Amended

Complaint ("CAC") was filed on February 25, 2004, which asserted
the same claim for breach of fiduciary duty under ERISA
§ 502(a)(3) as alleged in this action.  The CAC did not advance
a claim under ERISA § 510.  The CAC sought the same injunctive
and equitable relief as Plaintiffs seek in this action, except
that the CAC requested that a third party, rather than the
Defendants, re-evaluate previously denied claims.  On April 9,
2004, the plaintiffs in the MDL proceeding moved for class
certification.

B.   The Regulatory Settlement Agreement

       On November 18, 2004, while the MDL proceedings were
ongoing, Unum entered into a Regulatory Settlement Agreement
(the "RSA") with, as finally implemented, the United States
Department of Labor ("DOL") and the insurance departments of 48
states, including New York.  The Agreement, crafted by DOL and
the state insurance departments of New York, Tennessee,
Massachusetts, and Maine (the "Lead Regulators"), was reached
after a multi-state examination of Unum's claim processes and
procedures.  The "Lead Regulators" were charged with oversight
of Defendants' implementation of the RSA, which took effect on
December 20, 2004.

       The RSA required Unum to make changes to its corporate
governance and management.  Among other things, the RSA required

Unum to add three new independent directors with insurance regulatory experience to its Board of Directors, one of whom had to be appointed to the Audit Committee.  In addition, the Board of Directors had to create a Regulatory Compliance Committee ("RCC") and a Regulatory Compliance Unit ("RCU") to monitor Unum's claims handling practices.  The RCU and RCC were charged with monitoring compliance both with the RSA and with market conduct laws and ERISA generally.

The RSA required Unum to create a new unit comprised of experienced claims handlers to reassess previously denied or terminated claims (the "Claims Reassessment Unit" or "CRU"). The RSA outlines the specific unit structure and operating procedures for the CRU.  Under the RSA, the CRU had to conduct a de novo determination of all claims submitted to it, "gather any appropriate information not contained in the claims file" or provided by the claimant during the reassessment, and track and report its results.  Under the RSA, Unum was required to offer tens of thousands of claimants whose claims had been denied or terminated an opportunity to have their claims re-reviewed under the new RSA procedures.[1]

---

[1] Defendants extended this offer to each of the four Plaintiffs, but none opted to participate in the RSA reassessment, notwithstanding the fact that their participation would not have affected their right to litigate their claims against Unum except insofar as the RSA reassessment resulted in a reversal of the prior denial or termination of benefits.

The RSA set forth new procedures for processing claims. Experienced claims handlers were to be engaged at the earliest stage of reviewing a claim. Unum was required to provide sufficient training to all personnel and to establish a separate compliance unit to ensure that required changes were implemented. The RSA required Unum to "[i]ncrease focus on policies and procedures relating to medical and related evidence," to provide "clear and express notice to claimants of the information to be collected by [Unum]," and to work with claimants to obtain any missing information. The RSA also required that a claim file include "all documents relating to a claim history and/or decision."

With respect to monitoring and testing, the management of each Defendant and the RCC were required to meet separately on a quarterly basis with the Lead Regulators, and if appropriate, DOL, to evaluate Unum's compliance with the RSA. Both DOL and the Lead Regulators had access to Unum's claim files at all times. The Lead Regulators were required to monitor the claims reassessment process and could conduct examinations of the CRU decisions at their discretion. The Lead Regulators were also required to "monitor compliance with the changes in claim procedures set forth" in the RSA and could "conduct examinations of claims in the manner and at such intervals as the Lead Regulators deem[ed] appropriate." Unum reported on a quarterly

7

basis to the Lead Regulators regarding the progress of the
claims reassessment process, the results of internal audits, and
the rates of complaints and new litigation arising out of
disability claims.  In addition, the Lead Regulators performed
periodic reviews of randomly selected claims files.

The RSA required Unum to pay a $15 million fine.  The RSA
also provided for a $100,000 per day fine in the event that Unum
failed to implement the changes to its corporate governance,
claims reassessment process, claims organization and procedures,
or if Unum failed to conduct the required training within the
time specified in the RSA.  In addition, Unum was required to
pay a fine of $145 million if "the Lead Regulators upon
examination determine that claim reassessment decisions were
made in a manner inconsistent with the procedures of the Claim
Reassessment Unit" or if "the Lead Regulators determine[d] that
claims denied or benefits terminated after the Implementation
Date did not meet the standard for compliance" set forth in the
RSA.

The Lead Regulators issued their final report relating to
the RSA on April 14, 2008.  The report found that Unum had
implemented all required changes and that all other requirements
set forth by the regulators had been met.  On March 28, 2008,
California insurance regulators issued their final report
relating to a separate settlement agreement that California had

reached with Unum.  The California regulators' findings were similar to those of the Lead Regulators, and found zero errors relating to Unum's post-RSA claims handling.

C.   The January 2010 Summary Judgment Opinion

On July 1, 2005, after the close of discovery in the MDL proceeding, Defendants moved for summary judgment, seeking the dismissal of all of Plaintiffs' remaining claims.  Among other things, Defendants argued that Plaintiffs' request for prospective injunctive relief under ERISA § 502(a)(3) had been mooted by the RSA.

On September 4, 2007, the MDL court granted the Plaintiffs' April 9, 2004 motion for class certification.  In re UnumProvident Corp. ERISA Benefits Denial Actions, 245 F.R.D. 317 (E.D. Tenn. 2007).  On January 12, 2009, the Sixth Circuit reversed the MDL court's grant of class certification.  Romberio v. UnumProvident Corp., No. 07-6404, 2009 WL 87510 (6th Cir. Jan. 12, 2009).

On January 19, 2010, the MDL court granted in part, and otherwise declined to rule on, Defendants' motion for summary judgment on Plaintiffs' remaining individual claims.  In re UnumProvident Corp. ERISA Benefits Denial Actions, No. 03 Civ. 1000, MDL No. 03 Md. 1552, 2010 WL 323191 (E.D. Tenn. Jan. 19, 2010) (the "January 2010 Opinion").  With respect to Plaintiffs'

ERISA § 502(a)(3) claim, the MDL court concluded that
"Plaintiffs' claim for injunctive relief in the form of court-
supervised reformation of Defendants' nationwide claim-handling
procedures has been rendered moot by the RSA." Id. at *3.  The
MDL court found that the RSA "requires and implements new
practices and procedures to ensure Defendants are compliant with
ERISA" and "creates internal and external oversight mechanisms
to ensure these policies are created and implemented correctly."
Id.  The MDL court observed that "Plaintiffs have offered no
evidence suggesting Defendants' new procedures do not fully
comply with ERISA," and therefore "there [was] no meaningful
relief to be granted by entering an injunction ordering
Defendants 'to institute . . . new, national procedures that are
in full compliance with ERISA.'"  Id. (quoting from the CAC).
Accordingly, the MDL court "grant[ed] summary judgment on
[Plaintiffs'] request for prospective relief as moot."  Id.

The MDL court declined to grant summary judgment on
Plaintiffs' demand for an "independent review" of their claim
for benefits.  Id. at *4.  The MDL court found that while "it is
true the RSA provides for a re-review of claims, that process is
entirely voluntary."  Id.  Moreover, Defendants had conceded
that "the RSA does not affect a claimant's legal rights, and a
claimant who opts not to seek re-review maintains all of their
rights to pursue a remedy in federal court."  Id.  Thus, the MDL

court declined to rule on Defendants' argument that ERISA § 502(a)(3) provides no basis for such retrospective relief. The MDL court also declined to rule on any other grounds for summary judgment, suggesting that those remaining arguments should be left for transferor courts.  See id. at *4-*5.


D.   MDL Remand

On April 8, 2010, this action was remanded by the MDL Panel to this Court.  On June 18, Plaintiffs filed a motion for partial summary judgment.  Plaintiffs argue that, under the doctrine of collateral estoppel, they are entitled to summary judgment on their ERISA § 502(a)(3) breach of fiduciary duty claim because the existence of Defendants' alleged scheme to use budgets and targets to terminate disability claims was purportedly established by the findings of fact in another lawsuit, Merrick v. Paul Revere Life Ins. Co., 594 F. Supp. 2d 1168 (D. Nev. 2008).  Plaintiffs request, inter alia, an injunction against Defendants' "use of budgets and targets and any practices implementing that policy" and "a re-investigation and re-assessment of their denied claims."

On June 22, Defendants filed a cross-motion for summary judgment, seeking the dismissal of all of Plaintiffs' claims. Defendants contend that Plaintiffs' arguments concerning the application of Merrick to this case are both precluded by the

rulings made by the MDL court and, in any event, moot because of the RSA.  Defendants further argue that there is no basis for Plaintiffs' request for a re-evaluation of their claims and payment of benefits under ERISA § 502(a)(3) because such relief is available under ERISA § 502(a)(1)(B).  In addition, Defendants argue that Plaintiffs have failed to produce sufficient evidence to support their ERISA § 510 claim.  Both motions were fully submitted on July 30.


DISCUSSION

A.   Legal Standard for Summary Judgment

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In making this determination, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must

"set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

B.   Prospective Injunctive Relief Under ERISA § 502(a)(3)

     The Defendants have moved for summary judgment on Plaintiffs ERISA § 502(a)(3) claim.  Plaintiffs assert a claim for breach of fiduciary duty and seek injunctive and equitable relief under ERISA § 502(a)(3) to bring Unum's policies and claims processing procedures into compliance with ERISA.

Section 502(a)(3) provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to
> enjoin any act or practice which violates any
> provision of this subchapter or the terms of the plan,
> or (B) to obtain other appropriate equitable relief
> (i) to redress such violations or (ii) to enforce any
> provisions of this subchapter or the terms of the
> plan.

29 U.S.C. § 1132(a)(3).  In the January 2010 Opinion, the MDL

court concluded that because of the RSA-mandated reforms to

Defendants' practices and procedures, "there is no meaningful

relief to be granted by entering an injunction ordering

Defendants 'to institute . . . new, national procedures that are

in full compliance with ERISA.'"  January 2010 Opinion, at *3.

Accordingly, the MDL court denied Plaintiff's request for

prospective injunctive relief as moot.

Plaintiffs argue that the MDL court's decision "did not

discuss an injunction to stop [Defendants'] scheme itself or

foreclose further litigation in this Court regarding an

injunction to be obtained by these Plaintiffs to enjoin the

actual scheme."  Plaintiffs further argue that the January 2010

Opinion "referred to mootness only insofar as Plaintiffs'

seeking [sic] the very same remedies contained in the RSA as to

'court-supervised reformation of claims handling procedures.'"

Plaintiffs thus attempt to characterize the January 2010 Opinion

as not having reached their particular request to enjoin

Defendants' alleged budgets and targets scheme.

Plaintiffs' attempt to cabin the scope of the January 2010 Opinion is unavailing.  The MDL court's decision cannot plausibly be read as not having directly addressed Plaintiffs' request for prospective injunctive relief under ERISA § 502(a)(3).  In the Amended Complaint, Plaintiffs sought "injunctive relief whereby [Defendants] are ordered to immediately cease, in all States of the United States of America, engaging in the offending practices delineated herein," and "equitable relief whereby [Defendants] are ordered to institute new, national procedures that are in full compliance with ERISA."  It was exactly this relief that was requested in the CAC in the MDL proceedings and that the MDL court found was "moot" because of the RSA.  As the MDL court stated in the January 2010 Opinion, "[t]he RSA requires and implements new practices and procedures to ensure Defendants are compliant with ERISA," and thus "provides the requested relief."  January 2010 Opinion, at *3.

The Plaintiffs argue that their request for injunctive relief is aimed specifically at Defendants' "budgets and targets scheme," while the January 2010 Opinion concerned injunctive relief targeting Defendants' "practices and procedures."  Based on this parsing of the January 2010 Opinion, plaintiffs seem to suggest that they can still seek an injunction to stop the "budgets and targets scheme" even though the MDL court already

ruled that their request for injunctive relief as to Unum's "practices and procedures" was moot.  The Plaintiffs' reliance on these different labels fails.  Regardless of how the January 2010 Opinion is parsed, the MDL court found in no uncertain terms that Plaintiffs had "offered no evidence suggesting Defendants' new procedures do not fully comply with ERISA."  Id. It is difficult to see how there could be any ongoing ERISA violation if the Defendants have implemented, as the RSA required and the Lead Regulators confirmed, ERISA-compliant practices and procedures for processing disability insurance claims.[2]  Plaintiffs have provided no legal or factual basis for revisiting the MDL court's decision.  Accordingly, Defendant's motion for summary judgment on Plaintiffs' request for prospective injunctive relief under ERISA § 502(a)(3) is granted.[3]

C.   Re-evaluation of Claims under ERISA § 502(a)(3)

The remaining equitable relief sought by the Plaintiffs

---

[2] Nor would these Plaintiffs be in a position to know of any ongoing violation given that they refused to have their claims reassessed under the Defendants' post-RSA procedures and practices.

[3] Although the MDL court did not specifically address Plaintiffs' request that the Defendants be enjoined from serving as claim fiduciaries, the MDL court's finding that there was no basis for supporting Plaintiffs' request for court-supervised implementation of ERISA-compliant claim practices logically precludes any order that Defendants not serve as fiduciaries. Plaintiffs have provided no reason why this requested relief survives the MDL court's grant of summary judgment on their ERISA § 502(a)(3) claim.  Accordingly, Plaintiffs' request to enjoin Defendants from servings as claims fiduciaries is also denied.

pursuant to ERISA § 502(a)(3) is an order that Defendants "re-
evaluate all of the denied, terminated, or suspended claims of
Plaintiffs . . . in full compliance with the new, appropriate
procedures" and "render disability payments to all such persons,
participants, or beneficiaries whose adverse claims decisions
are reversed upon re-evaluation." Defendants argue that this
particular form of relief, which the Defendants characterize as
"remand to the claims administrator for reassessment," is fully
available under ERISA § 502(a)(1)(B), and thus does not qualify
as "other appropriate equitable relief" under ERISA § 502(a)(3).
Defendants argue that the remaining relief requested by the
Plaintiffs under § 502(a)(3) should therefore be denied.

      Where a claimant can obtain relief under some other
provision of ERISA § 502, a claim under ERISA § 502(a)(3) is not
ordinarily available. In Varity Corp. v. Howe, 516 U.S. 489
(1996), the Supreme Court described § 502(a)(3) as a "catchall"
provision that is available only "as a safety net, offering
appropriate equitable relief for injuries caused by violations
that § 502 does not elsewhere adequately remedy." Varity, 516
U.S. at 512; see also Wilkins v. Mason Tenders Dist. Council
Pension Fund, 445 F.3d 572, 578 (2d Cir. 2006). "[W]here
Congress elsewhere provided adequate relief for a beneficiary's
injury, there will likely be no need for further equitable
relief, in which case such relief normally would not be

17

'appropriate.'" Varity, 516 U.S. at 515.

The United States Court of Appeals for the Second Circuit
has, however, permitted plaintiffs to pursue breach of fiduciary
duty claims under both ERISA § 502(a)(1)(B) and § 502(a)(3)
under certain circumstances.  See Frommert v. Conkright, 433
F.3d 254, 272 (2d Cir. 2006); Devlin v. Empire Blue Cross & Blue
Shield, 274 F.3d 89, 89-90 (2d Cir. 2001).  In Devlin, the
Second Circuit held that because there was a factual dispute as
to whether plaintiffs could bring a claim under § 502(a)(1)(B),
plaintiffs could proceed with their § 502(a)(3) claim because it
might be "their only remaining remedy."  Devlin, 274 F.3d at 89.
The court nonetheless acknowledged Varity's holding that where
adequate relief for a beneficiary's injury is available under
other provisions of ERISA § 502, "equitable relief under
§ 502(a)(3) would 'normally' not be appropriate."  Id. (citing
Varity, 516 U.S. at 515).  Ultimately, the court held that when
relief is available under both ERISA § 502(a)(1)(B) and
§ 502(a)(3), "the determination of 'appropriate equitable
relief' rests with the district court," whose remedy must be
"limited to such equitable relief as is considered appropriate."
Id. at 89-90.

In Frommert, 433 F.3d 254, the Second Circuit again
addressed the Varity issue.  The plaintiffs in Frommert --
retirees who had been subsequently rehired by their employer --

sought, <u>inter alia</u>, equitable relief under ERISA § 502(a)(3). <u>Id.</u> at 269.  The form of the requested equitable relief was two-part:  first, a declaration that the employer's alleged unlawful practice violated ERISA and an injunction against its future use; and second, a claim for breach of fiduciary duty by the plan administrators.  <u>Id.</u>  As to the first request, the Second Circuit characterized the gravamen of the plaintiffs' claim as "recalculation of their benefits consistent with the terms of the Plan" and held that such relief "falls comfortably within the scope of § 502(a)(1)(B)."  <u>Id.</u> at 270.  Because "adequate relief" was available under § 502(a)(1)(B), the court concluded that there was "no need" for equitable relief under § 502(a)(3). <u>Id.</u>  The court further noted that "[w]hile the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available."  <u>Id.</u>  As to the plaintiffs' breach of fiduciary duty claim under § 502(a)(3), the Second Circuit held that, as in <u>Devlin</u>, the claim was not necessarily duplicative of a § 502(a)(1)(B) claim, but that the district court on remand would have to "determine what 'appropriate equitable relief' is necessary" if the plaintiffs prevailed on their claim.  <u>Id.</u> at 272.

     ERISA § 502(a)(1)(B) "specifically provides a remedy for

breaches of fiduciary duty with respect to the <u>interpretation of plan documents</u> and the <u>payment of claims</u>." <u>Varity</u>, 516 U.S. at 512 (emphasis added). "ERISA § 502(a)(1)(B) permits a plan participant or beneficiary to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" <u>Wilkins</u>, 445 F.3d at 578 (quoting 29 U.S.C. § 1132(a)(1)(B)). The Second Circuit has described § 502(a)(1)(B) as "the workhorse of ERISA remedy law, the provision under which routine benefit denial and other ERISA claims proceed." <u>Id.</u> (citation omitted). Thus, under § 502(a)(1)(B), any plan participant who feels that her claim was wrongfully denied or terminated may obtain individualized review of the decision by a federal court. <u>See, e.g.</u>, <u>Hobson v. Metro. Life. Ins. Co.</u>, 574 F.3d 75, 82 (2d Cir. 2009); <u>McCauley v. First Unum Life Ins. Co.</u>, 551 F.3d 126, 129 (2d Cir. 2008).

In this case, Plaintiffs' remaining request for equitable relief under ERISA § 502(a)(3) -- namely, that Unum "re-evaluate" their claims and "render disability payments" to those whose claims were incorrectly denied -- is precisely the type of relief that is available under ERISA § 502(a)(1)(B). Because Plaintiffs' request for re-evaluation of their claims and payment of any wrongfully-denied benefits is fully available

under ERISA § 502(a)(1)(B), relief under § 502(a)(3) is inappropriate and unnecessary.  The fact that the Plaintiffs have not brought a § 502(a)(1)(B) claim does not alter the fact that benefits are the gravamen of Plaintiffs' remaining request for relief and that redress is available under § 502(a)(1)(B).

Plaintiffs contend that the real gravamen of the Amended Complaint is injunctive relief to stop the Defendants' alleged budgets and targets scheme.  The Plaintiffs argue that this Court, in the April 29, 2003 Opinion denying the Defendants' motion to dismiss, has already permitted Plaintiffs' breach of fiduciary duty claim to proceed under ERISA § 502(a)(3).  While it is true that the Amended Complaint seeks injunctive and equitable relief beyond re-evaluation of Plaintiffs' claims and payment of any wrongfully-denied benefits, the MDL court's January 2010 Opinion dismissed as moot those additional aspects of the relief requested pursuant to § 502(a)(3).  At this stage of the litigation, unlike at the motion to dismiss phase, Plaintiffs' request for a re-evaluation of their claims and for payment of any wrongfully-denied benefits is the only remaining form of equitable relief requested in the Amended Complaint. Unlike in Devlin and Frommert, such relief is without question fully available to Plaintiffs under § 502(a)(1)(B). Accordingly, Defendants' motion for summary judgment on Plaintiffs' request for re-evaluation of their claims and

payment of any wrongfully-denied benefits under ERISA

§ 502(a)(3) is granted.[4]


D.   ERISA § 510

Plaintiffs argue that as claims administrators, Defendants

engaged in prohibited practices for the purpose of interfering

with the attainment of their rights under the subject disability

insurance plans in violation of ERISA § 510.  Defendants argue

that Plaintiffs' ERISA § 510 claim should be dismissed because

Plaintiffs fail to offer any evidence of interference by

Defendants with Plaintiffs' employment relationships.

Section 510 of ERISA provides in pertinent part:

> It shall be unlawful for any person to discharge,
> fine, suspend, expel, discipline, or discriminate
> against a participant or beneficiary for exercising
> any right to which he is entitled under the provisions
> of an employee benefit plan . . . or for the purpose
> of interfering with the attainment of any right to
> which such participant may become entitled under the
> plan.

29 U.S.C. § 1140; Sandberg v. KPMG Peat Marwick, L.L.P., 111

F.3d 331, 333 (2d Cir. 1997).  "Section 510 was designed

primarily to prevent unscrupulous employers from discharging or

---

[4] Because Defendants' motion for summary judgment on Plaintiffs'
ERISA § 502(a)(3) claim is granted in its entirety, there is no
need to reach Plaintiffs' argument concerning the collateral
estoppel effects of the findings of fact in Merrick v. Paul
Revere Life Ins. Co., 594 F. Supp. 2d 1168 (D. Nev. 2008), or
the argument Defendants' alleged wrongful conduct violates ERISA
§ 404.

harassing their employees in order to keep them from obtaining vested pension rights." Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) (citation omitted); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990) ("By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting.").

The law is unsettled as to the extent to which an ERISA § 510 claim must implicate the employer-employee relationship. Although the Second Circuit has not squarely addressed this issue, courts in this district have held that § 510 only proscribes "interference with the employment relationship." See, e.g., Ello v. Singh, 531 F. Supp. 2d 552, 571 n.18 (S.D.N.Y. 2007); Tirone v. N.Y. Stock Exchange, Inc., No. 05 Civ. 8703(WHP), 2006 WL 2773862, at *3 (S.D.N.Y. Sept. 28, 2006) (collecting cases). Thus, to defeat summary judgment, a plaintiff must adduce some evidence from which a reasonable jury could conclude that the defendant took some adverse action that affected the plaintiff's employment with the intent to interfere with the plaintiff's benefits rights under ERISA. See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997); see also Dister, 859 F.2d at 1111.

Here, even assuming that an ERISA § 510 claim can be asserted against a non-employer, Plaintiffs' claim fails.

23

Plaintiffs have offered no evidence that the Defendants took any action that affected the Plaintiffs' employment relationships for the purpose of interfering with Plaintiffs' attainment of rights under the subject disability insurance plans.  Indeed, Plaintiffs fail to identify any way in which their employment relationships were affected by the alleged wrongdoing of the Defendants.  Alternatively, Plaintiffs claim that they were "discriminated against" by the Defendants "by virtue of interfering with their rights" under the subject plans.  Yet Plaintiffs do not allege that such "discrimination" was in retaliation for exercising any rights under the subject plans, let alone provide any evidence of the alleged retaliation.  Such conclusory allegations are insufficient to withstand summary judgment.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' ERISA § 510 claim is granted.

CONCLUSION

Defendants' June 22 motion for summary judgment is granted.

Plaintiffs' June 18 motion for partial summary judgment is

denied.   The Clerk of Court shall close the case.


SO ORDERED:

Dated:    New York, New York
          September 14, 2010

DENISE COTE
United States District Judge

25